LEMONWEIR RIVER DRAINAGE DISTRICT, Respondent, vs. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Appellant.

*April 5—April 30, 1929.*

For the appellant there was a brief by *H. J. Killilea* and *Rodger M. Trump,* both of Milwaukee, and *Higbee & Higbee* of La Crosse, and oral argument by *E. C. Higbee.*

*Wm. R. McCaul* of Tomah, for the respondent.

ESCHWEILER, J.   It is contended that the condition created by placing the timbers or concrete walls across the course of Allen creek, a natural watercourse, at such a depth below the then natural bed of the stream as not to interfere with its flow in its natural state, is not subject to an order of the circuit court requiring the removal of the obstruction at the expense of the railroad company either by reason of any statutory or common-law duty so to do.

The statute under which the petitioner claimed the right to have the relief granted and which was held applicable by the court below, found as a part of ch. 89, Stats., the Drainage District Law, is, so far as here material, as follows:

"89.65 *Obstructions to flow of water.* (1) Whenever any embankment, grade, culvert or bridge . . . built or maintained by any . . . corporation across any natural watercourse or natural draw so obstructs such watercourse or draw that waters therein are set back or diverted upon lands in any district, such . . . corporation shall so enlarge the waterway through such embankment, grade, culvert or bridge . . . that it will not set back or divert such waters upon lands in such district.

"(2) The commissioners . . . may serve notice upon such . . . corporation to enlarge the waterway through such embankment, grade, bridge or culvert or to make new openings therein sufficient to let the waters pass without flooding such lands.

"(3) In case the . . . corporation maintaining such embankment, grade, bridge or culvert fails for sixty days after such notice is served to so enlarge . . . the commissioners . . . may report the facts to the court and petition that such owner or maintainer be required to enlarge such waterway."

The other provisions are as to the procedure and penalties.

Appellant urges that inasmuch as the timbers and concrete walls across, but below, the natural bed interfere with

the present flow of water only because of the change from the natural condition of the creek through the increased depth required for the drainage system, that they do not · constitute an obstruction, within the purview of such statute. It also urges that inasmuch as there is no showing that the original plans of the district showed or contemplated any excavation across the right of way ·in the bed of the stream, the railroad company cannot now be required under the statute invoked to bear the expense consequent upon any such present requirements. It further claims that if any provision of the drainage law is applicable to the present situation, it is rather sec. 89.43, which authorizes the commissioners of such a district to construct any necessary drains across a railroad right of way, and places the burden for the cost thereof and for culverts and bridges made necessary thereby on the district and not on the railway company, and makes such cost damages to the railway company to be included in the total construction cost of the drains.

We are satisfied that the proceedings were properly instituted and maintained under the aforesaid sec. 89.65 and not under sec. 89.43. The latter is clearly a provision to meet the situation where there must be a new opening across a right of way because of necessity for such to accommodate any proposed drainage system, as illustrated in *Chicago, M. & St. P. R. Co. v. Shepard D. Dist.* 163 Wis. 385, 158 N. W. 95, whereas sec. 89.65 relates to a situation where the railway company must have had to accommodate itself, in the first construction of its track, to a then existing natural watercourse.

Sec. 89.65, *supra,* is but a declaration of the common-law rule that a railroad company crossing with its roadbed a natural watercourse is bound to construct its roadbed so as not to materially interfere with the natural flow of such watercourse; and further, that such duty is not a once-and-for-all duty and forever discharged by a proper original construction over such stream, but is a continuing one, and

such railroad must adjust such construction thereafter and, in the absence of statute to the contrary, at its own expense, to meet changes in the condition of such watercourse arising, either from natural causes, or by reason of any lawful enlargement of the flow in the same because of constructions such as are here in question. This must especially be so where the railway company is a party to the original drainage proceedings as it was here.

We are cited to and find no authorities holding to the contrary of this doctrine, and it is so directly held in *Chicago, B. & Q. R. Co. v. Drainage Comm'rs,* 200 U. S. 561, 587, 26 Sup. Ct. 341, and *Chicago & E. R. Co. v. Luddington,* 175 Ind. 35, 93 N. E. 273.

The situation is quite analogous to that presented when considering railroad and highway crossings where the duty is held to be a continuous one. *Boston & M. R. Co. v. County Comm'rs,* 239 Mass. 127, 136, 131 N. E. 283. Lapse of time is not considered a bar. *Attorney General v. Boston & A. R. Co.* 246 Mass. 292, 297, 140 N. E. 928.

This disposition of the main question presented makes it immaterial to consider whether or not the original plans of the district then contemplated the lowering of the natural bed of the creek as it passed under the culvert.

*By the Court.*—Order affirmed.